UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LAURA DURTCHE,

       Plaintiff,                                      Hon. Robert Holmes Bell

v.                                                      Case No. 1:12-CV-1181

COMMISSIONER OF SOCIAL
SECURITY,

       Defendant.
_____/

**REPORT AND RECOMMENDATION**

This is an action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Commissioner of Social Security denying Plaintiff's claim for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) under Titles II and XVI of the Social Security Act. Section 405(g) limits the Court to a review of the administrative record, and provides that if the Commissioner's decision is supported by substantial evidence, it shall be conclusive. Pursuant to 28 U.S.C. § 636(b)(1)(B), authorizing United States Magistrate Judges to submit proposed findings of fact and recommendations for disposition of social security appeals, the undersigned recommends that the Commissioner's decision be **reversed and this matter remanded for further factual findings pursuant to sentence four of 42 U.S.C. § 405(g)**.

## STANDARD OF REVIEW

The Court's jurisdiction is confined to a review of the Commissioner's decision and of the record made in the administrative hearing process. *See Willbanks v. Sec'y of Health and Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision. *See Brainard v. Sec'y of Health and Human Services*, 889 F.2d 679, 681 (6th Cir. 1989).

The Court may not conduct a de novo review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Dep't of Health and Human Services*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health and Human Services*, 735 F.2d 962, 963 (6th Cir. 1984).

As has been widely recognized, the substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). This

standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

## PROCEDURAL POSTURE

Plaintiff was 55 years of age on the date of the ALJ's decision. (Tr. 22, 113). She successfully completed high school and worked previously as a cashier and laundry worker. (Tr. 21). Plaintiff applied for benefits on June 16, 2008, alleging that she had been disabled since November 1, 2006, due to knee impairments, depression, high blood pressure, back pain, and colon polyps. (Tr. 113-23, 155). Plaintiff's applications were denied, after which time she requested a hearing before an Administrative Law Judge (ALJ). (Tr. 62-112). On August 30, 2010, Plaintiff appeared before ALJ William Decker, with testimony being offered by Plaintiff and a vocational expert. (Tr. 29-61). In a written decision dated September 30, 2010, the ALJ determined that Plaintiff was not disabled. (Tr. 14-22). The Appeals Council declined to review the ALJ's determination, rendering it the Commissioner's final decision in the matter. (Tr. 1-6). Plaintiff subsequently initiated this appeal pursuant to 42 U.S.C. § 405(g), seeking judicial review of the ALJ's decision.

## RELEVANT MEDICAL EVIDENCE

**Emotional Impairments**

On May 8, 2006, Plaintiff participated in a psychiatric evaluation conducted by Dr. Thomas Zatolokin. (Tr. 342-46). Plaintiff reported that she was experiencing "really bad anxiety attacks" and had "been depressed for a long time." (Tr. 342). Plaintiff reported experiencing for

3

many years significant physical abuse. (Tr. 342). Plaintiff also reported that she was experiencing "physical debility in her back and knees." (Tr. 345). Plaintiff exhibited poor insight, but the results of a mental status examination were otherwise unremarkable. (Tr. 345-46). Plaintiff was diagnosed with: (1) bi-polar disorder, severe without psychotic features; (2) panic disorder with agoraphobia; and (3) post-traumatic stress disorder. (Tr. 346). Plaintiff's GAF score was rated as 40.[1] (Tr. 346).

Treatment notes dated March 5, 2007, indicate that Plaintiff continued to experience: (1) bi-polar disorder; (2) panic disorder with agoraphobia; and (3) post-traumatic stress disorder. (Tr. 358). Plaintiff's GAF score was rated as 55.[2] (Tr. 358). Treatment notes dated June 4, 2007, indicate that Plaintiff was "doing well" and was not experiencing any side effects from her medications. (Tr. 404). Treatment notes dated November 6, 2007, indicate that Plaintiff was "doing very well." (Tr. 416).

Treatment notes dated March 4, 2008, indicate that Plaintiff continued to experience: (1) bi-polar disorder; (2) panic disorder with agoraphobia; and (3) post-traumatic stress disorder. (Tr. 352). Plaintiff reported that her medications were "helpful" and her condition was characterized as "stable." (Tr. 424-25). Plaintiff's GAF score was rated as 53. (Tr. 352). On May 9, 2008, Plaintiff reported that she was "doing well." (Tr. 428-29).

On July 28, 2008, Bruce Douglass, Ph.D. completed a Psychiatric Review Technique form regarding Plaintiff's mental limitations. (Tr. 437-50). Determining that Plaintiff suffered from

---

[1] The Global Assessment of Functioning (GAF) score refers to the clinician's judgment of the individual's overall level of functioning. American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* 32 (4th ed. 2000) (hereinafter DSM-IV). A GAF score of 40 indicates that the individual is experiencing "some impairment in reality testing or communication or major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood." DSM-IV at 34.

[2] A GAF score of 55 indicates "moderate symptoms or moderate difficulty in social, occupational, or school functioning." DSM-IV at 34.

bi-polar disorder, panic disorder, and post-traumatic stress disorder, the doctor concluded that Plaintiff satisfied the Part A criteria for Section 12.04 (Affective Disorders) and Section 12.06 (Anxiety-Related Disorders) of the Listing of Impairments. (Tr. 438-46). The doctor determined, however, that Plaintiff failed to satisfy any of the Part B criteria for these particular Listings. (Tr. 447). Specifically, the doctor concluded that Plaintiff experienced mild restrictions in the activities of daily living, moderate difficulties in maintaining social functioning, moderate difficulties in maintaining concentration, persistence or pace, and never experienced extended episodes of decompensation. (Tr. 447).

Dr. Douglass also completed a Mental Residual Functional Capacity Assessment form regarding Plaintiff's limitations in 20 separate categories encompassing (1) understanding and memory, (2) sustained concentration and persistence, (3) social interaction, and (4) adaptation. (Tr. 433-35). Plaintiff's abilities were characterized as "moderately limited" in six categories. (Tr. 433-34). With respect to the remaining 14 categories, however, the doctor reported that Plaintiff either was "not significantly limited" or that there existed "no evidence of limitation." (Tr. 433-34).

Treatment notes dated February 11, 2009, indicate that Plaintiff was depressed and continues to experience "high situational stress." (Tr. 482-83). Treatment notes dated April 14, 2009, indicate that Plaintiff "continues to have problems with anxiety attacks and mood fluctuations." (Tr. 484-85). Treatment notes dated September 17, 2009, indicate that Plaintiff was "taking [her] medications as ordered" and that her "mood is good" with "no anxiety symptoms." (Tr. 488-89). Treatment notes dated December 17, 2009, indicate that Plaintiff was "doing well" and that her medications were "working well." (Tr. 522-23).

5

On or about May 4, 2010, Nurse Practitioner Tamlynn Evans completed a report concerning Plaintiff's ability to perform mental work-related activities. (Tr. 504-07). Evans rated Plaintiff's mental abilities in sixteen separate categories associated with unskilled work. (Tr. 505). Evans rated Plaintiff's abilities as "fair"[3] in 8 categories and "good" in 8 categories. (Tr. 505). Evans characterized as "unlimited or very good," Plaintiff's ability to: (a) interact appropriately with the general public, and (b) maintain socially appropriate behavior. (Tr. 506). Evans also reported, however, that "on average" Plaintiff would be absent from work "about three times a month" due to her impairments. (Tr. 507).

Treatment notes dated July 20, 2010, indicate that Plaintiff's "mood is good" with "no anxiety." (Tr. 597-98).

**Physical Impairments**

In 1993, Plaintiff underwent arthroscopic surgery on her left knee to repair "chondromalacia patella[4] and recurrent subluxation patella."[5] (Tr. 821-22). In 1999, Plaintiff underwent arthroscopic surgery on her right knee to repair "Grade IV chondromalacia of the medial

---

[3] The form Evans completed defined "fair" as the "ability to function in this area is seriously limited, but not precluded" and defined "good" as the "ability to function in this area is limited but satisfactory." (Tr. 504).

[4] Chondromalacia patella refers to an injury or damage to the cartilage under the kneecap. *See* Chondromalacia patella, available at http://www.mayoclinic.org/diseases-conditions/chondromalacia-patella/basics/definition/con-20025960 (last visited on March 10, 2014). Because the cartilage under the kneecap acts as the knee's "natural shock absorber," this impairment can cause pain when walking up or down stairs, for example. *Id.*

[5] When the knee is bent or straightened, the underside of the kneecap "glides over a groove in the bones that make up [the] knee joint." *See* Kneecap dislocation, available at http://www.nlm.nih.gov/medlineplus/ency/patientinstructions/000585.htm (last visited on March 10, 2014). Subluxation of the patella (kneecap) occurs when the kneecap slides "partway" out of the aforementioned groove. Recurrent subluxation of the patella "can further damage [the] knee joint." *Id.*

femoral condyle."[6] (Tr. 841-42). Plaintiff testified that she subsequently underwent one additional surgery on each knee. (Tr. 40-41).

Treatment notes dated October 25, 2006, indicate that Plaintiff was experiencing restless leg syndrome which was "much improved" with medication. (Tr. 314). On November 6, 2006, Plaintiff participated in a sleep study, the results of which revealed that she was experiencing "moderate obstructive sleep apnea" for which CPAP treatment afforded "excellent response." (Tr. 290-93).

On September 6, 2008, Plaintiff participated in a consultive examination conducted by Dr. Michael Simpson. (Tr. 451-54). Plaintiff reported that she was experiencing back pain and restless leg syndrome. (Tr. 451). An examination of Plaintiff's lumbar spine revealed tenderness with no evidence of radiculopathy. (Tr. 453). Plaintiff walked normally, but experienced "modest difficulty with certain orthopedic maneuvers." (Tr. 453). Plaintiff exhibited normal range of motion throughout her dorsolumbar spine as well as "normal" motor strength and function with no evidence of sensory impairment. (Tr. 453). Plaintiff's reflexes were "intact and symmetrical" and Romberg testing[7] was negative. (Tr. 453).

---

[6] The medial femoral condyle is "one of a pair of large flared prominences on the distal end of the femur. *See* Femoral condyle, available at http://medical-dictionary.thefreedictionary.com/femoral+condyle (last visited on March 10, 2014). The femoral condyle is covered with a thick layer of cartilage and articulates with the patella and the tibia at the knee joint. *Id.* Chondromalacia refers to "early alterations in the articular cartilage" and which "may eventually lead to patellofemoral arthritis." *See* Patellofemoral arthritis, available at http://emedicine.medscape.com/article/1933589-overview (last visited on March 10, 2014).

[7] Romberg test is a neurological test designed to detect poor balance. *See* Romberg Test, available at http://www.mult-sclerosis.org/RombergTest.html (last visited on March 10, 2014). The patient stands with her feet together and eyes closed. The examiner will then push her slightly to determine whether she is able to compensate and regain her posture. *Id.*

On June 1, 2010, Plaintiff reported to the emergency room after experiencing pain and swelling in her left knee for the previous two weeks. (Tr. 585-92). Plaintiff was diagnosed with "internal derangement" of her left knee. (Tr. 585-92).

On August 25, 2010, Plaintiff participated in a functional capacity evaluation conducted by physical therapist, Jeff Samyn. (Tr. 603-17). Plaintiff exhibited "a mostly valid and consistent effort" during the evaluation. (Tr. 603). With respect to Plaintiff's subjective pain complaints, Samyn considered such to be "mostly reliable," but "somewhat elevated compared to the extent of her physical findings." (Tr. 604). Samyn noted that testing revealed that Plaintiff to be experiencing "elevated psychometric findings." (Tr. 604). Samyn also reported that Plaintiff exhibited "a diminished cardiac response." (Tr. 604). Regarding such, Samyn noted that Plaintiff "takes a blood pressure medication which impairs the ability of her heart rate to increase during physical exertion." (Tr. 604).

Based on Plaintiff's performance, Samyn concluded that Plaintiff "can only lift a few pounds safely and dependably over the course of her day" and "may be at increased risk for injury when lifting heavy loads in awkward positions or when performing sudden twisting/lifting activities." (Tr. 604). Samyn further concluded that Plaintiff "requires the ability to change position from standing to sitting and sitting to standing every 10-20 minutes throughout the day." (Tr. 604).

At the administrative hearing, Plaintiff testified that she experienced pain in her knees and back. (Tr. 39-40). Plaintiff reported that her medication afforded her a twenty percent reduction in her back pain. (Tr. 40). Plaintiff testified that she was recently prescribed a cane because of her knee impairments. (Tr. 40). Plaintiff testified that she can stand continuously for five minutes and can walk, using her cane, approximately one-quarter mile. (Tr. 42). Plaintiff testified that she could

occasionally lift ten pounds, but was unable to frequently lift any amount of weight. (Tr. 43). Plaintiff also reported that she experiences mood swings and crying spells. (Tr. 45-48).

## **ANALYSIS OF THE ALJ'S DECISION**

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[8] If the Commissioner can make a dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The regulations also provide that if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining her residual functional capacity. *See* 20 C.F.R. §§ 404.1545, 416.945.

The burden of establishing the right to benefits rests squarely on Plaintiff's shoulders, and she can satisfy her burden by demonstrating that her impairments are so severe that she is unable to perform her previous work, and cannot, considering her age, education, and work experience, perform any other substantial gainful employment existing in significant numbers in the national economy. *See* 42 U.S.C. § 423(d)(2)(A); *Cohen*, 964 F.2d at 528. While the burden of proof shifts

---

[8] 1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. 404.1520(b));

2. An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. 404.1520(c));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. 404.1520(d));

4. If an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. 404.1520(e));

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. 404.1520(f)).

9

to the Commissioner at step five of the sequential evaluation process, Plaintiff bears the burden of proof through step four of the procedure, the point at which her residual functioning capacity (RFC) is determined. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997) (ALJ determines RFC at step four, at which point claimant bears the burden of proof).

The ALJ determined that Plaintiff suffered from: (1) bipolar I disorder; (2) panic disorder; and (3) post-traumatic stress disorder (PTSD), severe impairments that whether considered alone or in combination with other impairments, failed to satisfy the requirements of any impairment identified in the Listing of Impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1. (Tr. 16-18). With respect to Plaintiff's residual functional capacity, the ALJ determined that Plaintiff retained the capacity to perform "a full range of work at all exertional levels"[9] subject to certain non-exertional limitations. (Tr. 18-19).

With respect to Plaintiff's nonexertional limitations, the ALJ characterized as "fair" Plaintiff's ability to: (1) remember work-like procedures; (2) maintain attention for two hour segments; (3) maintain regular attendance and be punctual within customary, usually strict, tolerances; (4) sustain an ordinary routine without special supervision; (5) complete a normal workday and workweek without interruptions from psychologically-based symptoms; (6) perform at a consistent pace without an unreasonable number and length of rest periods; (7) accept instructions and respond appropriately to criticism from supervisors; (8) deal with normal work

---

[9] The Social Security Administration has created five separate classifications of physical exertion: (1) sedentary; (2) light; (3) medium; (4) heavy; and (5) very heavy. 20 C.F.R. § 404.1567. Heavy work involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds. 20 C.F.R. § 404.1567(d). Very heavy work involves lifting objects weighing more than 100 pounds at a time with frequent lifting or carrying of objects weighing 50 pounds or more. 20 C.F.R. § 404.1567(e).

stresses; (9) understand, remember, and carry out detailed instructions; and (10) deal with the stress of semi-skilled and skilled work. (Tr. 18-19). The ALJ further characterized as "good," Plaintiff's ability to: (1) set realistic goals or make plans independently of others. (Tr. 19).

Based upon the testimony of a vocational expert, the ALJ concluded that Plaintiff retained the ability to perform her past relevant work as a cashier and laundry worker. (Tr. 21). At step five of the sequential process, the ALJ relied exclusively on the medical-vocational guidelines to conclude that there existed a significant number of jobs which Plaintiff could perform despite her impairments. Accordingly, the ALJ concluded that Plaintiff was not disabled.

I.  **Plaintiff is not Entitled to a Sentence Six Remand**

In support of her appeal of the ALJ's decision, Plaintiff submitted to the Appeals Council evidence which had not been submitted to the ALJ. (Tr. 5, 643-805). This Court, however, is precluded from considering such material. *See Cline v. Commissioner of Social Security*, 96 F.3d 146, 148 (6th Cir. 1996); *Bass v. McMahon*, 499 F.3d 506, 512-13 (6th Cir. 2007). If Plaintiff can demonstrate, however, that this evidence is new and material, and that good cause existed for not presenting it in the prior proceeding, the Court can remand the case for further proceedings during which this new evidence can be considered. *Cline*, 96 F.3d at 148.

To establish good cause, Plaintiff must "demonstrate a reasonable justification for the failure to acquire and present the evidence for inclusion in the hearing before the ALJ." *Courter v. Commissioner of Social Security*, 479 Fed. Appx. 713, 725 (6th Cir., May 7, 2012). Moreover, the "mere fact that evidence was not in existence at the time of the ALJ's decision" does not satisfy the good cause standard. The Sixth Circuit "takes a harder line on the good cause test with respect to

11

timing and thus requires that the claimant give a valid reason for his failure to obtain evidence prior to the hearing." *Id.* To satisfy the materiality requirement, Plaintiff must show that there exists a reasonable probability that the Commissioner would have reached a different result if presented with the new evidence. *Sizemore v. Secretary of Health and Human Serv's*, 865 F.2d 709, 711 (6th Cir. 1988).

Plaintiff has failed to request a remand so that this evidence can properly be considered. Plaintiff has, therefore, waived any argument that this matter be remanded for consideration of the evidence at issue. *See, e.g., Porzillo v. Department of Health and Human Services*, 369 Fed. Appx. 123, 132 (Fed. Cir., Mar. 12, 2010) (claimant "waves any arguments that are not developed"); *Bass*, 499 F.3d at 513 n.3 ("inadequate development" of an argument constitutes waiver of such); *Shaw v. AAA Engineering & Drafting, Inc.*, 213 F.3d 519, 537 n.25 (10th Cir. 2000) (arguments "superficially" developed are waived).

**II.        The ALJ Properly Evaluated Nurse Evans' Opinion**

As previously noted, Nurse Practitioner Tamlynn Evans submitted a report concerning Plaintiff's ability to perform mental work-related activities. Evans rated Plaintiff's mental abilities as ranging from fair to unlimited in a variety of categories. Evans also reported that "on average" Plaintiff would be absent from work "about three times a month" due to her impairments. With the exception of this latter assertion, the ALJ adopted Evans' opinion. (Tr. 18-19). The ALJ rejected the opinion that Plaintiff would be absent three times monthly, however, on the ground that Evans "did not explain such an opinion, and the finding is inconsistent with the medical evidence of

record." (Tr. 19). Plaintiff argues that because Evans was a "treating source," the ALJ was required to articulate a good reason for rejecting her opinion.

The requirement that an ALJ articulate "good reasons" for affording less than controlling weight to a care provider's opinion only applies to opinions rendered by acceptable medical sources. *See, e.g., Smith v. Commissioner of Social Security*, 482 F.3d 873, 876 (6th Cir. 2007). A nurse practitioner, however, is not considered an acceptable medical source. *See* 20 C.F.R. §§ 404.1502; 404.1513(a); *Dykes v. Colvin*, 2014 WL 585319 at *3 (W.D. Ky., Feb. 13, 2014). Moreover, only acceptable medical sources can offer medical opinions. *See*, *e.g.*, 20 C.F.R. §§ 404.1527(a)(2); 416.927(a)(2).

Nevertheless, nurse practitioners and other unacceptable medical sources, are permitted to offer opinions regarding "the severity of [a claimant's] impairment(s) and how [such] affects [her] ability to work." *See*, *e.g.*, 20 C.F.R. §§ 404.1513(d); 416.913(d). When considering such an opinion offered by an unacceptable medical source, the ALJ must consider the following factors: (1) length of the treatment relationship and frequency of the examination, (2) nature and extent of the treatment relationship, (3) supportability of the opinion, (4) consistency of the opinion with the record as a whole, (5) the specialization of the treating source, and (6) other relevant factors. *See* Titles II and XVI: Considering Opinions and Other Evidence from Sources who are not "Acceptable Medical Sources" in Disability Claims, Social Security Ruling 06-03P, 2006 WL 2329939 at *2-3 (Soc. Sec. Admin., Aug. 9, 2006) (citing 20 C.F.R. §§ 404.1527; 416.927). While the ALJ is not required to explicitly discuss each of these factors, the record must nevertheless reflect that the ALJ considered those factors relevant to his assessment. *See, e.g.,* Social Security Ruling 06-03P, 2006 WL 2329939 at *5 ("not every factor for weighing opinion evidence will apply in

13

every case"); *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007); *Undheim v. Barnhart*, 214 Fed. Appx. 448, 450 (5th Cir., Jan. 19, 2007).

It is clear that the ALJ, in assessing the weight to afford the opinion that Plaintiff would be absent three times monthly, properly considered the aforementioned factors. The ALJ expressly stated that Evans' opinion was not supported and was inconsistent with the record as a whole. To the extent that additional factors were relevant in this particular instance, it is clear from the ALJ's discussion of the medical evidence that such factors were taken into consideration. Moreover, the ALJ's conclusion rejecting this particular aspect of Evans' opinion is supported by substantial evidence. Accordingly, this argument is rejected.

**III.     The ALJ's Conclusion that Plaintiff can Perform Her Past Relevant Work is Not Supported by Substantial Evidence**

At Step IV of the sequential evaluation process, the ALJ found, based upon testimony from a vocational expert, that Plaintiff could perform her past relevant work as a cashier and laundry worker. (Tr. 21). A review of the vocational expert's testimony, however, reveals that it does not support the ALJ's conclusion.

Generally, when an ALJ questions a vocational expert he will employ hypothetical questions which specifically describe the claimant's residual functional capacity, in response to which the vocational expert will indicate whether the claimant could perform her past relevant work or any other work existing in significant numbers. The ALJ questioned a vocational expert in this case and the relevant exchange is as follows:

ALJ: We have the RN's assessment, and a nurse practitioner in Exhibit 18F with Good's and Fair's in all the areas for mental functioning.[10] Fair is described as seriously limited but not precluded. And Good is satisfactory function in those areas. With those ratings, maybe we need to go through them individually for the Fair's, but do you think that would still allow any of her former work?

VE: I don't think those would be work preclusive.

ALJ: So that would still allow her former unskilled jobs, or would that rule out the one semi-skilled job?

VE: It could rule out the semi-skilled.

(Tr. 56-57).

While the ALJ in this instance questioned the vocational expert through use of a hypothetical question, such failed to detail or sufficiently describe Plaintiff's residual functional capacity. While the ALJ incorporated much of Evans' opinion into his RFC, the ALJ did not specifically describe the contents of Evans' opinion and there is no indication in the record that the vocational expert reviewed or was provided a copy of this exhibit. As previously noted, Evans rated Plaintiff's mental abilities in sixteen separate categories associated with unskilled work. Evans rated Plaintiff's abilities as "fair" in 8 categories and "good" in 8 categories. As the ALJ recognized when questioning the vocational expert, he should have individually identified for the vocational expert the categories in which Plaintiff's abilities were characterized as fair and in which categories her abilities were characterized as good. At a bare minimum, the ALJ should have identified for the vocational expert the number of categories in which Plaintiff's abilities were rated as fair and the number of categories in which her abilities were rated as good.

---

[10] Exhibit 18F represents the opinion expressed by Nurse Practitioner Tamlynn Evans discussed above.

The vocational expert's response would undoubtedly be effected depending on how Evans completed Exhibit 18F. For example, the vocational expert would likely have offered a different response if Plaintiff's abilities were characterized as "good" in 15 of the 16 categories as compared to if her abilities were instead characterized as "fair" in 15 of the 16 categories. Moreover, the vocational expert's testimony could very well change depending on whether Plaintiff's abilities were characterized as good or fair in particular categories. In other words, the vocational expert may afford different weight or significance to certain categories. This uncertainty is reflected in the vocational expert's response that he did not *think* that Plaintiff would be precluded from performing her past relevant work if limited to the extent articulated in Exhibit 18F. Such a qualified and less than definitive response simply does not constitute substantial evidence that Plaintiff retains the ability to perform her past relevant work as a cashier and laundry worker.

**IV.**     **The ALJ's Conclusion that Plaintiff can Perform Work which Exists in Significant Numbers is Not Supported by Substantial Evidence**

The medical-vocational guidelines, also known as the "grids," consider four factors relevant to a particular claimant's employability: (1) residual functional capacity, (2) age, (3) education, and (4) work experience. 20 C.F.R., Part 404, Subpart P, Appendix 2. Social Security regulations provide that "[w]here the findings of fact made with respect to a particular individual's vocational factors and residual functional capacity coincide with all the criteria of a particular rule, the rule directs a conclusion as to whether the individual is or is not disabled." 20 C.F.R., Part 404, Subpart P, Appendix 2, § 200.00. At Step V of the sequential process, the ALJ did not rely on the testimony of a vocational expert, but instead found that Plaintiff was not disabled based upon the

medical-vocational guidelines. Specifically, the ALJ found Plaintiff not disabled pursuant to Rule 204.00 of the grids.[11] Plaintiff argues that it was inappropriate for the ALJ to rely on the grids in this matter. The Court agrees.

First, the notion that Plaintiff is capable of performing heavy or very heavy work is absurd and enjoys no support in the record. There is no evidence that Plaintiff has ever performed work at that level of exertion. Moreover, while Plaintiff's physical impairments may not impose extreme limitations, such certainly preclude the performance of heavy or very heavy work. At a minimum, Plaintiff's long-standing knee impairments would appear to preclude the performance of heavy or very heavy work. Plaintiff's various emotional impairments may also limit her ability to perform the demands of physical labor. *See* Social Security Ruling 85-15, Titles II and XVI: Capability to do Other Work - the Medical-Vocational Rules as a Framework for Evaluating Solely Nonexertional Impairments, 1985 WL 56857 at *2 (Soc. Sec. Admin., 1985) ("[m]ental impairments are generally considered to be nonexertional, but depressions and conversion disorders may limit exertion"). In sum, the ALJ's reliance on a grid rule applicable to claimants capable of performing heavy or very heavy work is not supported by substantial evidence.

The ALJ has also failed to secure or identify reliable evidence that Plaintiff's non-exertional impairments do not significantly impact her ability to perform work. The grids only take into consideration a claimant's exertional (i.e., strength) limitations. Accordingly, where a claimant suffers from "nonexertional limitations that significantly restrict the range of available work," use

---

[11] This particular rule applies to claimants who retain the ability to perform heavy work or very heavy work. 20 C.F.R., Part 404, Subpart P, Appendix 2 § 204.00. Heavy work involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds. 20 C.F.R. § 404.1567(d). Very heavy work involves lifting objects weighing more than 100 pounds at a time with frequent lifting or carrying of objects weighing 50 pounds or more. 20 C.F.R. § 404.1567(e).

of the grids alone to make a disability determination is inappropriate. *See Jordan v. Commissioner of Social Security*, 548 F.3d 417, 424 (6th Cir. 2008). As the Sixth Circuit observed:

> [W]here a claimant has nonexertional impairments alone or in combination with exertional limitations, the ALJ must treat the grids as only a framework for decisionmaking, and must rely on other evidence to determine whether a significant number of jobs exist in the national economy that a claimant can perform. Reliance upon the grids in the presence of nonexertional limitations requires reliable evidence of some kind that the claimant's nonexertional limitations do not significantly limit the range of work permitted by [her] exertional limitations.

*Id.* at 424 (internal citations omitted).

The only evidence which the ALJ cited in support of his decision to rely on the grids at Step V of the sequential process was Social Security Ruling 85-15, Titles II and XVI: Capability to do Other Work - the Medical-Vocational Rules as a Framework for Evaluating Solely Nonexertional Impairments, 1985 WL 56857 (Soc. Sec. Admin., 1985). As the Sixth Circuit has held, however, Social Security Ruling 85-15 does not constitute "reliable evidence" in this context where the claimant suffers from both exertional and non-exertional limitations. *See Jordan*, 548 F.3d at 424. As discussed above, the ALJ's conclusion that Plaintiff suffers from no exertional limitations is not supported by substantial evidence. Accordingly, the ALJ's determination that Plaintiff is not disabled pursuant to grid rule 204.00 is not supported by substantial evidence.

**V.      Remand is Appropriate**

As detailed herein, the ALJ's conclusion that Plaintiff was not disabled is not supported by substantial evidence. While the Court finds that the ALJ's decision fails to comply with the relevant legal standards, Plaintiff can be awarded benefits only if proof of her disability is

"compelling." *Faucher v. Secretary of Health and Human Serv's*, 17 F.3d 171, 176 (6th Cir. 1994) (the court can reverse the Commissioner's decision and award benefits if all essential factual issues have been resolved and proof of disability is compelling). While the ALJ's decision is not supported by substantial evidence, there does not exist *compelling* evidence that Plaintiff is disabled. In sum, evaluation of Plaintiff's claim requires the resolution of factual disputes which this Court is neither authorized nor competent to undertake in the first instance. The Court concludes, therefore, that the Commissioner's decision must be reversed and this matter remanded for further factual findings.

## CONCLUSION

For the reasons articulated herein, the undersigned concludes that the ALJ's decision is not supported by substantial evidence. Accordingly, it is recommended that the Commissioner's decision be **reversed and this matter remanded for further factual findings pursuant to sentence four of 42 U.S.C. § 405(g)**.

OBJECTIONS to this report and recommendation must be filed with the Clerk of Court within fourteen (14) days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within such time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

Respectfully submitted,

Date: March 12, 2014

/s/ Ellen S. Carmody
ELLEN S. CARMODY
United States Magistrate Judge